# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### JEFFERSON CITY DIVISION

| | | |
|---|---|---|
| **PATRICK KEMPKER**, Individually and as Surviving Father of Mya Kempker, Decedent, and on BEHALF OF THE CLASS OF PERSONS DESIGNATED BY R.S.MO. § 537.080, | ) ) ) ) ) ) | |
| **TIFFANY KEMPKER**, Individually and as Surviving Mother of Mya Kempker, Decedent, and on BEHALF OF THE CLASS OF PERSONS DESIGNATED BY R.S.MO. § 537.080 | ) ) ) ) ) ) | |
| | ) ) | Case No. |
| Plaintiffs, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| **COLE COUNTY R-V SCHOOL DISTRICT**, <u>Serve</u>:  Charley Burch, Superintendent <br>        14803 Highway 17 <br>        Eugene, Missouri 65032 | ) ) ) ) ) | |
| **DAWNA BURROW**, former Superintendent individually and in her official capacity, <u>Serve at residence</u>: <br>        80 Cave Drive <br>        Eldon, Missouri 65026 | ) ) ) ) ) ) | |
| **MARK RICHARD**, former Principal, individually and in his official capacity, <u>Serve at residence</u>: <br>        8701 N. Shore Drive <br>        Eugene, Missouri 65032 | ) ) ) ) ) ) | |
| **MEGAN BRINKMANN**, Assistant Principal, individually and in her official capacity, <u>Serve at place of employment</u>: <br>        14803 Highway 17 <br>        Eugene, Missouri 65032 | ) ) ) ) ) ) | |

)
Defendants.                )

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs, Patrick Kempker and Tiffany Kempker, individually and as surviving parents and Class I representatives of Decedent Mya Kempker, through counsel, and on behalf of the class of individuals as defined in Mo. Rev. Stat. § 537.080.1, and for their causes of action against Defendant Cole County R-V School District, Superintendent Dawna Burrow, Principal Mark Richard, and Assistant Principal Megan Brinkmann, state as follows:

## INTRODUCTION

1.      This is a civil rights case resulting from Defendants' violations of Mya Kempker's (Decedent's) rights and liberties under the United States Constitution and made pursuant to 42 U.S.C. §§ 1983 and 1988. This is also an action for negligence and wrongful death pursuant to Missouri's Wrongful Death Act and associated statutes, including but without limitation, Mo. Rev. Stat. §§ 537.080 and 537.090.

2.      While in the custody, care, and control of the Cole County R-V School District and its administrators, teachers, employees, agents, servants, and staff, including Defendants Burrow, Richards, and Brinkmann, Defendants failed to protect Decedent Mya Kempker from serious harm resulting from bullying. Further, Defendants were negligent, and such negligence caused or contributed to cause the death of Decedent Mya Kempker.

3.      Defendants acted in deliberate indifference to the risks associated with bullying and violent behavior, and Defendants' inaction amounted to a deliberate indifference to or tacit authorization of bullying and violent behavior at Cole R-V School, of which Decedent Mya Kempker was a victim.

2

4.      As a direct and proximate result of Defendants' negligence and disregard of its own policies concerning ensuring student safety, Mya Kempker not only experienced physical, emotional, and psychological pain and suffering, but died a horrible and preventable death.

5.      Defendants' acts and omissions, occasioned under color of state law, evince a knowing and deliberately indifferent pattern of conduct in violation of the Fourteenth Amendments of the United States Constitution and state law, giving rise to both federal claims and pendent state law claims, including wrongful death/negligence causes of action.

## PLAINTIFFS

6.      **Plaintiffs, Patrick Kempker and Tiffany Kempker** ("Plaintiffs") are the natural surviving parents of Mya Kempker, a 13-year-old girl who passed away on May 14, 2021, as a result of suicide.

7.      Plaintiffs are entitled to bring this wrongful death action on behalf of all individuals designated under Mo. Rev. Stat. § 537.080.1(1) for the death of Decedent, Mya Kempker.

## DEFENDANTS

8.      **Defendant Cole County R-V School District ("District")** is a public school district organized under the laws and regulations of the State of Missouri, located in Eugene, Missouri.

9.      Defendant Cole County R-V School District receives federal financial assistance.

10.     At all times relevant hereto, Defendant District was acting by and through its agents, servants, and/or employees, actual or ostensible, including, but not limited to Defendants Dawna Burrow (former Superintendent), Mark Richard (former Principal), and Megan Brinkmann (Assistant Principal and Athletic/Activity Director) each of whom was acting individually and within the course and scope of their employment with the District. Defendant District is liable for

their actions or inactions described herein under the principles of vicarious liability and/or *respondeat superior*, and under the laws of the state of Missouri and/or federal law.

11.    Defendant Cole County R-V School District does not have sovereign immunity for claims for which it has an insurance policy that provides coverage. Upon information and belief, Defendant purchased a liability insurance policy that was in effect at all times relevant hereto that provides insurance coverage for the negligence of the School District and/or its officials, and for the tort claims and damages alleged herein.

12.    Upon information and belief, at all times relevant to this action, **Defendant Dawna Burrow** was an employee, servant, or agent of the Cole County R-V School District, acting as its Superintendent.

13.    Defendant Cole County R-V School District is liable for Ms. Burrow's actions described herein under the principles of vicarious liability and/or respondent superior and the laws of Missouri.

14.    Upon information and belief, Defendant Burrow was at all times relevant to the allegations herein a resident of Missouri.

15.    Upon information and belief, at all times relevant to this action, **Defendant Mark Richard** was an employee, servant, or agent of the Cole County R-V School District, acting as its High School Principal.

16.    Defendant Cole County R-V School District is liable for Mr. Richard's actions described herein under the principles of vicarious liability and/or respondent superior and the laws of Missouri.

17.    Upon information and belief, Defendant Richard was at all times relevant to the allegations herein a resident of Missouri.

4

18.     Upon information and belief, at all times relevant to this action, **Defendant Megan Brinkmann** was an employee, servant, or agent of the Cole County R-V School District, acting as Assistant Principal and Athletic/Activity Director.

19.     Defendant Cole County R-V School District is liable for Ms. Brinkmann's actions described herein under the principles of vicarious liability and/or respondent superior and the laws of Missouri.

20.     Upon information and belief, Defendant Brinkmann was at all times relevant to the allegations herein a resident of Missouri.

21.     Plaintiff alleges that each of the Defendants performed, participated in, aided and/or abetted in some manner the acts averred in this Complaint, including but not limited to by failing to appropriately and effectively address and remedy violent bullying within the School District about which Defendants knew or should have known, thereby proximately causing the damages to Plaintiffs averred below, and tolerating a school environment where students, including Mya Kempker, are/were subjected to a pattern of ongoing severe, pervasive, and objectively offensive bullying and harassment, and as such Defendants are liable to Plaintiffs for the damages and other relief sought.

22.     The precise nature and extent of each of the defendants' knowledge, involvement, and participation is expected to be discovered and exposed, with evidentiary support, after a reasonable opportunity for further investigation and discovery.

23.     At all times relevant herein, the individual defendants were acting within the course and scope of their employment with Defendant Cole County R-V School District and/or their actions were expressly authorized and/or ratified by Defendant District.

Case 2:22-cv-04081-MDH   Document 1   Filed 05/25/22   Page 5 of 37

## JURISDICTION AND VENUE

24.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 inasmuch as Plaintiffs present federal claims arising under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

25.     This Court has jurisdiction under 28 U.S.C. § 1367 to hear Plaintiffs' state law claims in that all claims made herein are so related to each other that they form part of the same case or controversy under Article III of the United States Constitution.

26.     The claims in this case arise out of or relate to Defendants' transaction of business, and Defendants' commission of tortious acts, within the state of Missouri. Therefore, this Court has personal jurisdiction over Defendants.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in, and, at the time of this action was commenced, at least one of the Defendants was subject to personal jurisdiction in Eugene, Cole County, Missouri, which lies within the Jefferson City Division of the Western District of Missouri.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

28.     Plaintiffs Patrick Kempker and Tiffany Kempker, are the natural parents of Mya Kempker, Decedent.

29.     During the 2020-2021 school year, Mya Kempker was an eighth-grade student in the Cole R-V School District in Eugene, Missouri.

30.     During the 2020-2021 school year, Mya Kempker's father, Patrick Kempker, was a custodial employee in the Cole R-V School District where Mya was a student.

6

31.     The District, its administrators, and its teachers have a duty to provide a safe learning environment to students.

32.     A school environment that includes bullying is not a safe learning environment for students.

33.     In January 2021, Defendant Cole County R-V School District admitted eighth-grade student A.H. for enrollment within the District.

34.     Defendant Cole County R-V School District and Defendants Richard and Burrow knew or should have known at the time of A.H.'s admission that A.H. had a history of bullying behavior and had been expelled from at least one other Missouri public school for bullying, including the prior school she attended.

35.     The District's Board Policy 2200, regarding "Admission and Withdrawal" provides in part:

> . . . Upon a request to enroll any student in the District, the Superintendent/Designee will request the student's previous school records along with any other relevant records as set forth in Regulation 2200 and state law. Any enrollment of a student prior to receipt of the student's previous discipline records will remain conditional until receipt of such records. A student will be allowed to attend school during conditional enrollment so long as the student does not violate the District's code of conduct or pose a threat of harm to students or employees of the District. . . .

36.     Policy 2200 requires the Superintendent, or her Designee, to request the student's previous school records, along with any other relevant records, of a student seeking enrollment in the District, without discretion.

37.     Additionally, the District's Board Policy 2290, regarding "Denial of Admission & Student Withdrawal from School" provides in part:

> A student may be denied admission based upon a previous disciplinary expulsion that would result in expulsion in the District or criminal conduct as provide in Policy and Regulation 2664 and state law.

7

38.     On information and belief, Defendants and other school administrators failed to perform their required due diligence in accordance with District Policy 2200 in receiving, reviewing, and investigating A.H.'s prior school records and history of bullying and aggression toward peers in connection with her admission to the District.

39.     On information and belief, Defendants and other school administrators failed to deny A.H.'s admission under the parameters set forth in Policy and Regulation 2290.

40.     On information and belief, school administrators and personnel knew or should have known that following her enrollment, A.H. acted as an aggressor and bully toward students at the Eugene Middle School.

41.     On information and belief, A.H. bullied Mya Kempker on multiple occasions during the Spring 2021 semester while at school.

42.     Additionally, on information and belief, a male student who was a known bully also subjected Mya Kempker to bullying during the Spring 2021 semester.

43.     The male student threatened to kill Mya's dog numerous times.

44.     When Mya became upset and attempted to stand up for herself, she was punished with in-school suspension while, on information and belief, the male student was not disciplined.

45.     Additionally, on information and belief, Assistant Principal Brinkmann subjected Mya Kempker to bullying in the form of extreme nitpicking, unfairly singling her out and subjecting her to unwarranted criticism and discipline over minor issues, and further by placing blame on Mya Kempker as a victim of bullying.

46.     During a track practice in the Spring 2021 season, Mya's friend appeared at the track while waiting for a ride from her mother. Assistant Principal Brinkmann, who was also the Athletic/Activity Director, unfairly admonished Mya's friend for appearing at the practice, and

directed both girls to leave the school grounds. Having been required to leave the school grounds, Mya and her friend were then forced to walk alongside a dangerous highway near the school, where Patrick Kempker picked them up after he received a phone call from someone who saw the girls alongside the highway.

47. During the Spring 2021 semester, Mya Kempker's grades were suffering which, on information and belief, was a result of bullying she was experiencing at school at the hands of peers and school personnel.

48. Toward the end of the Spring 2021 semester, Vice Principal Brinkmann unfairly denied Mya Kempker recognition for her participation on the track team during an awards banquet (while her teammates all received an award), allegedly because she had missed multiple practices even though the practices coincided with school tutoring sessions and despite the fact Mya had participated in several track meets with the team.

49. A few days before the end of the 2020-2021 school year, on or about May 11, 2021, while in a lunch line in the cafeteria at Eugene Middle School, Mya Kempker asked A.H. to return "silly putty" belonging to Mya.

50. An argument ensued in which A.H. refused to return Mya Kempker's property, and threatened to spit in Mya's mouth.

51. Mya Kempker responded with words to the effect of, "Spit on me and see what happens."

52. A.H. thereafter spat in Mya's face, and Mya subsequently swung at and punched A.H.

53. A.H. thereafter wrestled Mya to the floor, was on top of Mya, and continued to spit in or around her mouth while pummeling her.

9

54.     A.H. was larger in stature than Mya Kempker who had a slighter build.

55.     On information and belief, A.H. was overheard telling Mya that she should "just kill [her]self."

56.     The assault was video-recorded by one or more bystanders and later circulated among the student body, despite a District policy prohibiting cell phone use.

57.     The District's Board Policy 2656, regarding "Student Cell Phone Usage" provides:

> Developments in cell phone technology in recent years have resulted in enhanced communication opportunities. However, the use of cell phones in schools poses increasing risks of school disruptions, bullying, criminal activity, and academic dishonesty. As a result, beginning with the 2008-09 school year, student cell phones, digital cameras and similar electronic devices will be banned during the instructional day, as well as, in dressing areas during extracurricular activities. Violation of this policy will result in confiscation of the item and disciplinary action as stated in the student handbook.

> Telephones are available in school offices for parents to contact their student for legitimate reasons.

58.     On information and belief, the students who used cell phones to record and/or distribute recordings of Mya's assault were not disciplined in accordance with Policy 2656.

59.     During lunch hours, approximately 60-100 students are often present in the cafeteria.

60.     A custodial employee happened to be in the area and intervened to break up the fight.

61.     At the time of the A.H. assaulted Mya Kempker, the cafeteria was unsupervised by an administrator or teacher, in violation of District policy which requires that students be supervised at all times during school hours.

62.     The District's Board Policy 2730, regarding "Supervision of Students" provides:

> Students are to be under supervision of the professional staff at all times during school hours and at school sponsored activities.

10

It is the responsibility of principals to arrange for adequate supervision. It is the duty of teachers to perform assigned supervision. Students are not to be left unsupervised during the school day whether in instructional areas or on the playground.

63.     Policy 2730 requires principals to arrange for adequate supervision of students at all times, without discretion.

64.     At the time of the assault on Mya Kempker, no administrator or teacher was present in the cafeteria supervising the students.

65.     Principal Mark Richard admitted to Patrick Kempker that Megan Brinkmann had been assigned to supervise the cafeteria at the time of the assault but she had left the area.

66.     On information and belief, school administrators and personnel failed to make any effort to investigate the assault and bullying Mya Kempker endured.

67.     Instead, school administrators assigned the same punishment and suspension to both A.H., the bully and instigator, and Mya Kempker, the victim, who was merely standing up for herself, and acting in self-defense in the absence of any supervising administrator or teacher to help protect her.

68.     More specifically, Mya Kempker was punished in the form of a three-day out of school suspension, to include the last two days of the 2020-2021 school year (May 12 and May 13, 2021), and the first day of the 2022-2023 school year.

69.     A.H. was assigned the same punishment as Mya Kempker.

70.     Mya Kempker believed her punishment was unfair, and a form of further victimization in that she was punished for standing up for herself when no administrator or teacher was present to supervise the situation and intervene on her behalf, despite District policy requiring supervision at all times.

11

71.     Defendant District has policies and procedures in place to prevent and remedy bullying and/or violence suffered by students, and is obligated to take appropriate action to prevent, address, investigate, and remedy such harms.

72.     Mo. Rev. Stat. § 160.775 requires each Missouri public school district to have an anti-bullying policy.

73.     Specifically, School Board Policy 2655, entitled "Bullying," provides:

The District is committed to maintaining a learning and working environment free of any form of bullying or intimidation.  Bullying is strictly prohibited on school grounds, or school time, at a school sponsored activity or in a school related context.  Bullying is the intentional action by an individual or group of individuals to inflict intimidation, unwanted aggressive behavior, or harassment that is repetitive or is substantially likely to be repeated and causes a reasonable student to fear for his or her physical safety or property; substantially interferes with the educational performance, opportunities, or benefits of any student without exception; or substantially disrupts the orderly operation of the school. Bullying may consist of physical actions, including gestures, or oral, cyberbullying, electronic, or written communication, and any threat of retaliation for reporting acts of bullying.

Cyberbullying means bullying as defined above through the transmission of a communication including, but not limited to, a message, text, sound, or image by means of an electronic device including, but not limited to, a telephone, wireless telephone, or other wireless communication device, computer, or pager. The District may prohibit and discipline for cyberbullying that originates on any District campus or at a District activity if the electronic communication was made using the school's technological resources, if there is a sufficient nexus to the educational environment, or if the electronic communication was made on the District's campus or at a District activity using the student's own personal technological resources. Further, students who engage in significant acts of misconduct off campus which materially and adversely impact the education of District students will be subject to discipline.

Bullying, as defined in this policy, is strictly prohibited.  Students are encouraged to report any incident of bullying which they have witnessed or incurred, by contacting their building principal. District employees are required to report any instance of bullying of which the employee has witnessed within two (2) school days of the occurrence. Employees shall report the occurrence to the building principal, who is the person the District designates to receive reports of incidents of bullying.  A principal who receives a report of an incident of bullying shall initiate an investigation into the allegations within two (2) school days of receipt of the report.  The principal may assign other employees to assist in the investigation, or request that the superintendent assign an outside investigator.

12

The investigation shall be completed within ten school days from the date of the written report of bullying unless good cause exists to extend the investigation. No employee or student who reports an act of bullying shall be subject to reprisal or retaliation for making such a report. Any person who engages in reprisal or retaliation against an employee or student who reports an act of bullying shall be subject to disciplinary action.

Students who are found to have violated this policy will be subject to consequences depending on factors such as: age of student(s), degree of harm, severity of behavior, number of incidences, etc. Possible consequences to a student for a violation of this policy include: loss of privileges, classroom detention, conference with teacher, parents contacted, conference with principal, in-school suspension, out-of-school suspension, expulsion and law enforcement contacted.

The District shall give annual notice of the policy to students, parents or guardians, and staff. This policy shall be included in all student handbooks. This policy shall also be posted on the District's web page (as a Board policy) and a copy shall be placed in the District Administrative Office.

The District shall provide information and appropriate training to District staff who have significant contact with students regarding the policy. All staff with significant student contact shall be trained on the requirements of this policy on an annual basis.

The District shall provide education and information to students regarding bullying, including information regarding this policy prohibiting bullying, the harmful effects of bullying, and other applicable initiatives to address bullying, including student peer-to-peer initiatives to provide accountability and policy enforcement for those found to have engaged in bullying, reprisal, or retaliation against any person who reports an act of bullying. The District shall instruct its school counselors, school social workers, licensed social workers, mental health professionals, and school psychologists to educate students who are victims of bullying on techniques for students to overcome bullying's negative effects. Such techniques include but are not limited to, cultivating the student's self-worth and self-esteem; teaching the student to defend himself or herself assertively and effectively; helping the student develop social skills or encouraging the student to develop an internal locus of control. District administrators will implement programs and other initiatives to address bullying, to respond to such conduct in a manner that does not stigmatize the victim, and to make resources or referrals available to victims of bullying.

74. On information and belief, Defendants failed to adhere to the District's "Bullying" policy in that Defendants failed to appropriately and effectively address, thoroughly investigate, and remedy A.H.'s bullying toward Mya Kempker and potentially others, and thereby condoned an unsafe school atmosphere that included bullying, and left Mya Kempker and other students vulnerable to bullying and assault.

13

75. The District's Board Policy 2740, regarding "Student Safety," further provides, in part:

> The District will notify the Department of Elementary and Secondary Education (DESE) of all violent criminal offenses committed on school premises when the victim is a student or employee. Reportable offenses are set out in Regulation 2740.

76. School Board Regulation 2740 includes "assault" as defined under Missouri law (e.g., Mo. Rev. Stat. §§ 565.060 and 565.050) within its list of reportable offenses.

77. Policy 2740 requires the District and its officials and administrators to notify DESE of assault, without discretion.

78. On information and belief, Defendants failed to report A.H.'s assault of Mya Kempker to DESE as required by District Policy 2740.

79. School Board Policy 2673, regarding "Reporting of Violent Behavior," provides:

> The District requires school administrators to report acts of school violence to all teachers at the attendance area and other District employees who are directly responsible for the student's education or who interact with the student in the performance of the employee's duties, and who have a need to know. School administrators will also disclose to appropriate staff members portions of any student's individualized education program that is related to past or potentially future violent behavior. Violent behavior and the phrase acts of school violence are defined as the use of physical force by a student with the intent to do serious physical injury to another person while on school property, including a school bus, or while involved in school activities. In addition the Superintendent/designee will report to law enforcement officials, as soon as is reasonably practicable, the commission of any of the acts or related juvenile offenses listed in Regulation 2673, which are committed on school property, including school buses, or while involved in school activities.

> In addition the Superintendent/designee will report to law enforcement officials, as soon as is reasonably practicable, the commission of any of the acts or related juvenile offenses listed in Regulation 2673, which are committed on school property, including school buses, or while involved in school activities.

80. The District's Board Regulation 2673 includes "assault" and "second degree assault" within its list of reportable offenses.

14

81. On information and belief, Defendants failed to report A.H.'s assault and violent behavior to teachers and law enforcement in accordance with School District Policy 2673 and Regulation 2673.

82. Shortly after the assault of Mya Kempker in the cafeteria, her father, Patrick Kempker, spoke with Mark Richard, High School Principal. Principal Richard informed Mr. Kempker about the students' mutual suspensions and suggested Mya had contributed to the fight by "asking [A.H.] to spit in her face."

83. Mr. Kempker adamantly disputed the accusation and explained that A.H. initiated the assault by threatening to spit in Mya's face and Mya merely responded in self-defense.

84. Mr. Kempker told Principal Richard that he had received a video of the assault from a bystander, which angered Principal Richard who told Mr. Kempker to "erase" the video.

85. On the way home from school on May 11, 2021, Mya Kempker expressed anger and frustration to her father that she had been suspended when she was merely attempting to retrieve her property when A.H. verbally and physically assaulted her.

86. In her eight years of schooling with Cole County R-V School District, Mya Kempker had never been involved in any physical altercation.

87. On information and belief, Assistant Principal and Athletic/Activity Director Megan Brinkmann blamed Mya Kempker for the bullying and assault, and told Mya that she had "asked for" the fight with A.H., thereby condoning A.H.'s bullying and violent behavior and further victimizing Mya for responding in self-defense.

88. On information and belief, Ms. Brinkmann personally participated in bullying behavior toward Mya Kempker during the 2020-2021 school year.

89.     As a result of the bullying Mya Kempker endured at the hands of her peers and District personnel, and as a result of Defendants' failure to properly supervise and prevent bullying, and as a result of Defendants' response in blaming and punishing Mya as the victim of bullying, Mya. experienced humiliation and depression.

90.     The acts alleged herein caused Mya Kempker to suffer mental anguish, emotional distress, psychological harm, and to fear for her safety and well-being at school.

91.     On May 14, 2021, three days after being assaulted by A.H. and on the first day of summer following the first two days of her three-day out-of-school suspension, Mya Kempker died as a result of suicide in the form of self-inflicted strangulation.

92.     On information and belief, Mya discussed the fight with a close friend and peer in the hours before her death.

93.     On information and belief, during the 2022-2023 school year, A.H. continued to engage in bullying and violence toward students at the Cole R-V School, including physically assaulting a disabled fifth grader on the bus.

94.     On information and belief, the District has engaged in a pattern of failing to prevent, address, and remedy bullying by District students and personnel about which it knew or should have known prior to the time of Mya Kempker's death, thereby fostering an environment in which bullying is permitted and tolerated, and enabling bullies to inflict physical, emotional, and psychological harm on students, including Mya.

95.     On information and belief, the District knew or should have known during the 2020-2021 school year and prior to Mya Kempker's death, about the history of bullying within the District by staff and students, and that the District's failure to prevent, address, and remedy the

16

pattern of bullying has resulted in resident families transferring their children to other school districts to ensure their children's safety.

96. On information and belief, another student of the District suffered a terrible and preventable death by suicide during the 2021-2022 school year as a result of continued bullying within the District.

## COUNT I
### Wrongful Death - Negligence
### (Against Defendant Cole County R-V School District
### and Defendants Burrow, Richard, and Brinkmann)

97. Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

98. While a student in the Cole County R-V School District, and during the 2020-2021 school year, Decedent Mya Kempker, a minor, was in the care, custody, and control of Defendant Cole County R-V School District.

99. School Districts exercise significant control over their students through disciplinary policies.

100. Student A.H. acted with the intention of making Mya Kempker feel intimidated, threatened, fearful, or apprehensive for her safety, humiliated, degraded, ostracized, less important, or unworthy.

101. At the time of, and leading up to, Mya Kempker's death, the Cole County R-V School District knew or should have known that student A.H. and/or other students within its custody and control were engaging in bullying behavior as defined in its own anti-bullying policy.

102. The Cole County R-V School District's response was to systematically and repeatedly fail to discourage and prevent the bullying acts, and to repeatedly fail to thoroughly investigate the bullying acts which had the reasonably foreseeable consequence of encouraging

17

perpetrators to continue bullying peers and to make the victims of such bullying feel hopeless. In other words, the District's acquiescence to bullying created an unsafe school environment in which bullying was tolerated.

103. Defendants owed Mya Kempker. a safe learning environment free from bullying.

104. Defendants failed to protect Mya Kempker from bullying and abuse, and instead punished Mya for standing up for herself, thereby subjecting her to further victimization.

105. While Mya Kempker was at Cole R-V School, Defendants owed Decedent a legal duty of care so as to prevent injury to Decedent.

106. At all times in which Mya Kempker was at Cole R-V School, Defendants had a duty to possess and use the same degree of care ordinarily used by reasonable and/or careful school districts and school administrators to properly supervise its students and protect them from foreseeable and unreasonable risks of harm posed by students under the School District's custody and control.

107. Defendant District promised to supervise its students at all times and to prevent bullying in its school district. Defendants failed in their duty to properly supervise its student and to intervene effectively to stop the bullying Mya Kempker was suffering at the hands of A.H. by:

    a. Negligently and carelessly admitting student A.H. into the District despite her history of and propensity for violent and bullying behavior of which the District knew or should have known;

    b. Negligently and carelessly failing to monitor and supervise during school hours and on school premises for physical and verbal abuse;

    c. Negligently and carelessly failing to timely recognize the severity of the abuse against Mya;

18

d.  Negligently and carelessly failing to ensure a safe learning environment for Mya;

e.  Negligently and carelessly failing to supervise and appropriately discipline the students abusing Mya;

f.  Negligently and carelessly failing to comply with the District's own anti-bullying policy and other policies described herein;

g.  Negligently and carelessly committing acts and omissions that encouraged continual acts of bullying to take place against Mya;

h.  Negligently and carelessly contributing to cause Mya Kempker's emotional distress and psychological harm by punishing Mya for defensive behavior she engaged in in an attempt to avoid further degradation, humiliation, intimidation, and other emotionally harmful feelings caused, or contributed to be caused, by acts of bullying that Defendants encouraged or condoned through inaction by standing up for herself when no one else did;

i.  Negligently and carelessly failing to comply with anti-bullying measures that were in place that required meaningful actions to take place that did not take place; and

j.  Negligently and carelessly committing other acts and omissions as yet unknown to Plaintiffs which will be revealed during the discovery and development of evidence in this case.

108.  On information and belief, Defendants knew or should have known of student A.H.'s history and propensity for violent behavior and bullying, and that Decedent and potentially other students was/were subjected to bullying and violence at the hands of student A.H., which

presented serious risks of imminent and substantial harm, and yet Defendants failed to take appropriate actions to prevent, address, and/or remedy such bullying and violence in accordance with District policies.

109.     Mya Kempker was an intended beneficiary and person that was to be protected by the rules, regulations, and statutes and laws against bullying and harassment.

110.     Mya Kempker took her own life after being repeatedly bullied in an environment wherein bullying was tolerated and accepted by Defendants.

111.     Mya Kempker suffered significant emotional distress as a direct and proximate result of the Defendants' negligent and careless acts and omissions.

112.     At all times mentioned herein, before and after, the above-described individual defendants were agents, servants, and employees of Defendant District were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant District, and/or their actions were ratified by the Defendant District making it vicariously liable for said actions under the doctrine of *respondeat superior*.

113.     As a direct and proximate result of Defendants' negligence, and as a direct and proximate result of Defendants' policies, customs, and procedures, combining, concurring and contributing, Decedent died on May 14, 2021.

114.     Prior to her death, Mya Kempker suffered from severe mental anguish that was caused or contributed to be caused by the School District Defendants' negligent acts and omissions as stated more fully herein.

115.     Defendants' actions have caused Plaintiffs and the group of beneficiaries they represent to suffer those injuries and available damages set forth in Mo. Rev. Stat. § 537.090 as a result of the wrongful death of Decedent, including the pain and suffering and death of Decedent,

pecuniary losses, loss of earnings, medical expenses, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which the beneficiaries have been deprived by reason of such death.

116.     By reason of the foregoing, Plaintiffs have been damaged and is entitled to fair and reasonable compensation.

117.     Defendants' conduct which caused this damage showed complete indifference to and/or conscious disregard for the health and safety of Mya Kempker and others, and Defendant acted with a deliberate and flagrant disregard for the safety of Mya and others, justifying the imposition of punitive and aggravating circumstances damages.

WHEREFORE, Plaintiffs respectfully request judgment on Count I in favor of Plaintiffs and against Defendants, jointly and severally, as the law allows, and awarding as follows: compensatory and non-economic damages in a reasonable amount to be determined by a jury as set forth in Mo. Rev. Stat. § 537.090; punitive, exemplary, and aggravating circumstances damages in an amount sufficient to deter Defendants and others from like conduct; and such other and further relief as the Court deems just and proper, together with costs and interest.

## COUNT II
### Negligent Infliction of Emotional Distress
### (Against Defendant Cole County R-V School District
### and Defendants Burrow, Richard, and Brinkmann)

118.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

119.     Defendants breached duties owed to Mya Kempker.

120.     Defendants committed negligence and tortious acts against Mya Kempker.

121.     At the time of its negligent acts and omissions, Defendants should have known that continuous bullying and abuse by peers causes victims to suffer from one or more of the following:

21

lack of motivation at school, increased absenteeism, chronic anxiety, depression, psychiatric problems, and suicidal tendencies, and this suffering becomes worsened through the inaction by those served to protect the schools' children.

122. Mya Kempker suffered significant emotional distress as a direct and proximate result of the Defendants' negligent and careless acts and omissions.

123. Mya Kempker suffered physical pain and mental anguish, and eventually lost her life, and Defendants' negligence caused, or contributed to cause, such harm and death.

124. Defendants' conduct which caused, or contributed to cause, Mya Kempker's death showed a complete indifference to, and/or a conscious disregard for, the health and safety of her and others similarly situated, justifying the imposition of punitive damages.

125. As a direct and proximate result of the injuries to and death of Mya Kempker, Plaintiffs were required to expend, incur, and become indebted for medical and funeral expenses.

126. Further, Plaintiffs and Mya Kempker's family have forever lost the love, services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of Mya, together with all damages that Mya Kempker sustained before her death and for which she would have been entitled to recover had she lived.

WHEREFORE, Plaintiffs respectfully request this Court enter an order granting judgment against Defendants on Count II, jointly and severally as the law may allow, for compensatory damages, together with her costs herein expended, for aggravated circumstances damages in such a sum as will punish Defendants, and deter them from like conduct in the future, plus prejudgment and post-judgment interest at the legal rate, and for such other and further relief as the Court deems just and proper.

**Wrongful Death – Section 1983 – State Created Danger (42 U.S.C. § 1983)**
**(Against Defendant Cole County R-V School District**
**and Defendants Burrow, Richard, and Brinkmann)**

127.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

128.     Because Missouri has chosen to provide a free public education to its children, Mya Kempker had a constitutional property right to a free public education protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

129.     Mya Kempker also had constitutional rights to bodily integrity, to due process, to be secure and left alone, and to life protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

130.     The Defendants' actions and inactions were done in their capacity as agents of the School District, and individually, and were done under the color of state law.

131.     At the time of their actions and/or inactions, the Defendants knew, or should have known, that a pattern, history, and culture of bullying existed within the School District.

132.     At the time of their actions and/or inactions, the Defendants had actual knowledge of ongoing and severe abuse suffered by Mya Kempker and other similarly situated students, from students and personnel who engaged in such bullying while under the custody and control of the School District, and that the abuse deprived its victims, including, but not limited to, Mya and some of her fellow students, as it would any school-age child, their right to a safe education, their right to bodily integrity, their right to be free from the harmful, long lasting, and sometimes fatal effects that are caused by bullying.

133.     At the time of their actions and/or inactions, the Defendants knew or should have known that Mya Kempker was the victim of bullying.

134.    At the time of their actions and/or inactions, it was readily foreseeable to the Defendants that the bullying would continue into the future which in turn naturally results in the deprivation of Mya Kempker's constitutional rights to a safe public education, to bodily integrity, to be secure and left alone, and to life when they failed to comply with policies, laws, and regulations pertaining to anti-discrimination and bullying.

135.    The Defendants' actions and inactions enhanced the danger to Mya Kempker, and those similarly situated to Mya, by rendering her/them more vulnerable to the deprivation of their rights to an equally safe education, bodily integrity, security, and to life through numerous affirmative acts, including, but not limited to:

     a.  Failing to comply with their own anti-bullying policy departmental rules;

     b.  Affirmatively discouraging victims of bullying from reporting bullying through inaction or through punishing the victims for standing up for themselves;

     c.  Affirmatively discouraging victims of bullying by taking no action causing victims of bullying, including Mya, to know that reporting bullying would be hopeless and harmful in that she would be subject to punishment and retaliation;

     d.  Affirmatively enhancing Mya's vulnerability to abuse; and

     e.  Affirmatively encouraging further abuse by bullies in the School District and at Cole R-V School, and at the School District by failing to take any meaningful action as required when bullying acts are made known to them, thereby creating a culture where bullying is tolerated.

136.    The Defendants' affirmative acts and omissions were committed with a deliberate indifference to, and a reckless and willful disregard for, Mya Kempker's constitutional rights.

These affirmative acts increased the danger to Mya, and ultimately caused or contributed to cause her death in that they:

    a. Left Mya at the mercy of her bullying peers while affirmatively preventing her from taking any actions to stop the bullying, torment, abuse, and harassment, and leaving her no reasonable means of escape or protection;

    b. Increased Mya's feelings that she deserved and would always deserve to be harassed, bullied, tormented, abused, and that she should not protect herself, and that the school would do nothing to protect her and would instead punish her if she defended herself, which included telling on students;

    c. Increased the bullying acts through inaction;

    d. Encouraged further and more severe bullying, harassment, torment, and abuse of Mya Kempker from her classmates by sending the message to her abusers that the school approved of her classmates' behavior and would not interfere or respond in any way, except to punish Mya for defending herself; and

    e. By permitting teachers to participate in the bullying and harassment of Mya Kempker and other similarly situated students.

137.    These affirmative acts and/or omissions by the Defendants, taken as a whole and in the context of a known bullying culture in the School District, increased the danger to Mya Kempker, and such conduct amounts to shocking, egregious, and outrageous behavior.

138.    Mya Kempker incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost her life, all as a direct and proximate result of Defendants' actions and/or actions.

139.     By reason of the foregoing, such conduct caused, or contributed to cause, Mya Kempker's death, and Plaintiffs have been damaged and are entitled to fair and reasonable compensation.

140.     The Defendants' conduct which caused this damage showed a complete indifference to, and/or a conscious disregard for, the health and safety of Mya Kempker, and other people similarly situated to her, justifying the imposition of punitive damages.

141.     As a direct and proximate result of the injuries to and death of Mya Kempker, Plaintiffs were required to expend, incur, and become indebted for medical and funeral expenses.

142.     Further, Plaintiffs and Mya Kempker's family have forever lost the love, services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of Mya, together with all damages that Mya sustained before her death and for which she would have been entitled to recover had she lived. Pursuant to 42 U.S.C. § 1988(b), Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs respectfully request this Court to enter an order granting judgment against Defendants on Count III of Plaintiffs' Complaint, jointly and severally as the law may allow, for compensatory damages, for attorneys' fees, together with her costs herein expended, for aggravated circumstances damages in such a sum as will punish Defendants, and deter them from like conduct in the future, plus prejudgment and post-judgment interest at the legal rate, and for such other and further relief as the Court deems just and proper.

### COUNT IV
### Wrongful Death – Denial of Substantive Due Process Through Failure to Train and Supervise (42 U.S.C. § 1983)
### (Against Defendant Cole County R-V School District)

143.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

26

144. Through education and/or training, Defendant was or should have been aware of the negative and harmful emotional and psychological effects of bullying on students, and the risks of suicide for victims targeted by bullying.

145. When measured and complied with, anti-bullying policies and laws are intended to reduce and prevent severe, ongoing, and targeted bullying and to transform bullying school cultures into positive and supportive school cultures.

146. The Defendant actually knew, or should have known, of severe, ongoing, and targeted bullying in its schools, in that Defendant, through its administrators, officials, and representatives:

    a. Knew that Mya Kempker and/or other similarly situated students were the victims of bullying acts, harassment, and torment by classmates at the District's schools prior to Mya's death;

    b. On information and belief, knew of complaints of bullying by students or concerned parents in the District;

    c. Were aware that Mya Kempker. was intentionally physically assaulted by another student whom the District knew or should have known had a history of bullying for which she was expelled from at least one other school, but Defendants failed to conduct any investigation into the assault;

    d. Knew bullying students encourage their victims to kill themselves;

    e. Knew victims of bullying had had to transfer schools to escape their tormentors; and

f.  Knew victims of bullying have had to undergo counseling and psychiatric treatment due to depression, anxiety and other mental health problems caused by the pervasive harassment and bullying which is made known to Defendants;

g.  Knew, or should have known, that severe and pervasive harm was being done to victims of bullying and bullies were going untreated, both of which have lasting effects into adulthood; and

h.  Knew or should have known of other instances of bullying unknown to Plaintiff at present, but that will become known through discovery and the evidence.

147.  The Defendant should have known, and/or did actually know, of the severe, ongoing, and targeted bullying to which Mya Kempker was subjected.

148.   The Defendant should have known, and/or did actually know, that the consistent response to Mya Kempker's victimization was to ignore that bullying and punish or deter victims of bullying when they would stand up to their tormentors with verbal threats of their own.

149.  The Defendants should have known, and/or did actually know, that the consistent response to bullying in the district was to ignore instances of bullying, and to deny that a bullying problem existed in the School District's schools.

150.  Given what the Defendant should have known, and/or actually knew, the likelihood of current and future deprivations of constitutionally protected rights to an education, to bodily integrity, to be secure and left alone, and to life was a natural and obvious and/or reasonably anticipated and foreseeable result.

151.  As trained educators, all officials and teachers in the School District were required to be aware of effective bullying prevention strategies and appropriate responses to bullying incidents.

152.     Despite this widely published and widely publicized research, the School District failed to implement, or failed to comply with, proven anti-bullying policies and laws meant to prevent or deter bullying in its schools.

153.     Defendant failed to properly train and supervise its employees and agents with regard to the prevention of bullying, the appropriate response to reports of bullying, and how to provide meaningful protection to children from known bullying.

154.     Despite the District's actual and constructive knowledge of an ongoing pattern of bullying incidents, and an ongoing pattern of improper responses to those incidents by teachers and administrators, as well as the existence of a dangerous bullying culture, the District failed to properly train and supervise its employees and agents with regard to prevention of bullying, response to reports of bullying, and protection of children from known bullying.

155.     As a result of the District's failure to train and supervise its employees and agents, Mya Kempker was deprived of her rights to a free public education, to bodily integrity, to be secure and left alone, to life, and her rights to substantive due process under the Fourteenth Amendment to the United States Constitution.

156.     The District's failure to train and supervise its employees and agents constituted a deliberate indifference to, and a deprivation of, Mya Kempker's rights to a public education, to bodily integrity, to be secure and left alone, to life, and substantive due process under the Fourteenth Amendment to the United State Constitution.

157.     Mya Kempker incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost her life, all as a direct and proximate result of Defendant's actions and/or inactions.

158.    Defendant's conduct which caused this damage showed a complete indifference to, and/or a conscious disregard for, the health and safety of Mya Kempker, and other people similarly situated, justifying the imposition of punitive damages.

159.    Pursuant to 42 U.S.C. § 1988(b), Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

160.    As a direct and proximate result of the injuries to and death of Mya Kempker, Plaintiffs were required to expend, incur, and become indebted for medical and funeral expenses.

161.    Further, Plaintiffs and Mya Kempker's family have forever lost the love, services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of Mya, together with all damages that Mya sustained before her death and for which she would have been entitled to recover had she lived.

WHEREFORE, Plaintiffs respectfully request this Court to enter an order granting judgment against Defendants on Count IV of Plaintiffs' Complaint, for compensatory damages, for attorneys' fees, together with her costs herein expended, for aggravated circumstances damages in such a sum as will punish Defendants, and deter them from like conduct in the future, plus prejudgment and post-judgment interest at the legal rate, and for such other and further relief as the Court deems just and proper.

## COUNT V
**Denial of Substantive Due Process Through A Policy, Custom, and Practice of Failing To Respond To Or Prevent Bullying In Its Schools (42 U.S.C. § 1983)**
**(Against Defendant Cole County R-V School District)**

162.    Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

163.    The District, including the school board and the superintendent in the School District at the relevant times, knew, or should have known, that there existed among

30

administrators, counselors, and teachers a continuing, widespread and persistent pattern of failing to respond appropriately to bullying incidents, including those incidents in which Mya Kempker was the victim.

164. The District, including the school board and the superintendent in the School District at the relevant times, knew, or should have known, that there existed a continuing, widespread, and persistent pattern of administrators failing to implement or ensure compliance with its anti-bullying policy, departmental rules, regulations, and state laws meant to prevent bullying and at a minimum ensure that appropriate responses to bullying incidents are made to avoid further harm towards a victim by not having anyone stand up for them, including bullying incidents like those in which Mya Kempker was the victim.

165. The District, including the school board, the superintendent, and the principals in the School District at the relevant times, knew, or should have known, that such failures were causing its students, including Mya Kempker, to suffer deprivations of their rights to a public education, to bodily integrity, to be secure and left alone, to life, and substantive due process under the Fourteenth Amendment to the United States Constitution.

166. Nevertheless, the District, including the school board, the superintendent, and the principals in the School District at the relevant times of the occurrences described in this Wrongful Death Petition for Damages, maintained a practice of inappropriate and impermissible responses to known bullying incidents, a practice of failing to measure the anti-bullying policy's effectiveness, rejecting the implementation of, or not complying with, proven bullying prevention policies and laws, and a practice of allowing bullying incidents and a bullying culture to continue unchecked in the District's schools.

31

167. The District's actions and inactions show a deliberate indifference to or tacit approval of the constitutional misconduct of its employees and a deliberate indifference to Mya Kempker and other students' rights to a public education, to bodily integrity, to life, to be secure and be left alone, and substantive due process under the Fourteenth Amendment to the United States Constitution.

168. Because the bullying continued unchecked and even increased as employees refused to come to the aid of victims, and even punished victims, for defending themselves, this policy and practice was the moving force behind the deprivation of Mya Kempker's rights to a public education, to bodily integrity, to life, to be secure and left alone, and substantive due process under the Fourteenth Amendment to the United States Constitution.

169. The School District's actions and inactions caused, or contributed to cause, Mya Kempker's death.

170. Mya Kempker incurred necessary and reasonable medical expenses, suffered physical pain and mental anguish, experienced other economic hardships, and eventually lost her life, all as a direct and proximate result of Defendant's actions.

171. As a direct and proximate result of the injuries to and death of Mya Kempker, Plaintiffs were required to expend, incur, and become indebted for medical and funeral expenses.

172. Further, Plaintiffs and Mya Kempker's family have forever lost the love, services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of Mya, together with all damages that Mya sustained before her death and for which she would have been entitled to recover had she lived.

173. Defendants' conduct which caused this damage showed complete indifference to and/or a conscious disregard for the health and safety of Mya Kempker, and other people similarly situated justifying the imposition of punitive damages.

174. Pursuant to 42 U.S.C. § 1988(b), Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs respectfully request this Court to enter an order granting judgment against Defendant on Count V of Plaintiffs' Complaint, for compensatory damages, for attorneys' fees, together with her costs herein expended, for aggravated circumstances damages in such a sum as will punish Defendant, and deter them from like conduct in the future, plus prejudgment and post-judgment interest at the legal rate, and for such other and further relief as the Court deems just and proper.

**COUNT VI**
**Fourteenth Amendment, 42 U.S.C. § 1983**
**(All Defendants)**

175. Plaintiff incorporates by reference the above paragraphs as though fully set forth herein.

176. The above-described conduct by the defendants, which is specifically set forth in the preceding paragraphs, violated the rights of Mya Kempker not to be deprived of equal protection of the laws on the basis of sex and/or gender as guaranteed by the Fourteenth Amendment of the Constitution of the United States and Section 1983 of Title 42 of the United States Code.

177. Mya was intentionally treated differently from a male student bully who was similarly situated in all material respects, because Defendants failed to adhere to their own policies and promptly and effectively address and remedy allegations of bullying and harassment against

33

the male student, and thereby tolerated the male student's bullying and harassment of Mya, and enabled the male student to engage in continued bullying and harassment toward Mya, a female student.

178.     There is no rational basis or reasonable justification for the difference in treatment between female students/victims of bullying and the male student bully, whereby the male student bully was given preferential treatment over Mya, his female victim, in that Defendants failed to thoroughly investigate and effectively discipline the male student for his bullying, harassment, and misconduct in accordance with District policies, and thereby exposed Mya to the male perpetrator's continued misconduct.

179.     Defendants deprived Mya and potentially other female students, particularly those who have been victimized by the male student bully, of the full benefits of education because of sex and/or gender.

180.     Defendants, by subjecting Mya to bullying and harassment by a male student, and despite the defendants' actual and/or constructive knowledge of a pattern of bullying occurring within the District—deprived Mya of a safe learning environment and one free from bullying and harassment due to their failure to prevent the bullying and harassment of Mya, and by issuing Mya discipline as the victim of bullying and not issuing discipline to the male student bully.

181.     Defendant District's failure to promptly and appropriately address and remedy bullying and harassment had the systemic effect of denying Mya and potentially other female students the right to enjoy equal access to a learning environment free from bullying, intimidation, harassment, humiliation, gender bias, and other discriminatory and bullying behaviors.

182.     Defendants, in failing to appropriately address and prevent bullying and harassment and in failing to issue discipline to the male student bully while instead disciplining Mya as his victim, created an environment that fostered the bullying of Mya.

183.     The actions and conduct of the above-described perpetrators as set forth herein created a hostile, offensive and intimidating environment and detrimentally affected Mya.

184.     The actions and conduct by the above-described perpetrator as set forth herein were severe and pervasive and based on Mya's gender, and constituted discrimination based on such sex and/or gender.

185.     The bullying and harassment suffered by Mya is the result of a custom, practice, or policy of Defendant District that ignores or otherwise fails to appropriately address female victims' complaints of bullying and harassment and prevent further bullying and harassment, while giving preferential treatment to male students and perpetrators by failing to thoroughly investigate and impose effective discipline to prevent bullying and harassment toward female students like Mya.

186.     The actions and omissions of Defendants as set forth herein would have detrimentally affected a reasonable person of the same sex in Mya's position.

187.     Despite having knowledge of such deprivation on the basis of Mya's and potentially other female students' sex or gender, Defendants failed to take appropriate corrective measures to remedy bullying and harassment in the District and to prevent the bullying and harassment of Mya based on gender.

188.     As a direct and proximate result of the injuries to and death of Mya Kempker, Plaintiffs were required to expend, incur, and become indebted for medical and funeral expenses.

189.     Further, Plaintiffs and Mya Kempker's family have forever lost the love, services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of Mya,

together with all damages that Mya sustained before her death and for which she would have been entitled to recover had she lived.

190.    Defendants' conduct which caused this damage showed complete indifference to and/or a conscious disregard for the health and safety of Mya Kempker, and other people similarly situated justifying the imposition of punitive damages.

191.    Pursuant to 42 U.S.C. § 1988(b), Plaintiffs are entitled to recover reasonable attorneys' fees and costs incurred in bringing this action.

WHEREFORE, Plaintiffs respectfully request this Court to enter an order granting judgment against Defendant on Count VI of Plaintiffs' Complaint, for compensatory damages, for attorneys' fees, together with her costs herein expended, for aggravated circumstances damages in such a sum as will punish Defendant, and deter them from like conduct in the future, plus prejudgment and post-judgment interest at the legal rate, and for such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all issues.

Respectfully submitted by,


HOLMAN SCHIAVONE, LLC


By: */s/ Anne W. Schiavone*
Anne W. Schiavone, 49349 (MO)
Kathleen E. Mannion, 63992 (MO)
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
Telephone: 816.283.8738
Fax: 816.283.8739
aschiavone@hslawllc.com
kmannion@hslawllc.com

ATTORNEYS FOR PLAINTIFF